**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

ROBERT JACKSON, III                    CIVIL ACTION NO. 24-1717

VERSUS                                 JUDGE S. MAURICE HICKS, JR.

MERRICK B. GARLAND, ET AL.             MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Rule 12(b)(6) Motion to Dismiss (Record Document 36) filed by Defendant, the United States of America ("the United States"). The United States seeks the dismissal of all claims asserted by Plaintiff, Robert Jackson, III ("Jackson"), on the ground that Jackson, who challenges the constitutionality of 18 U.S.C. § 922(g)(1), has not been fully restored his civil rights such that he could legally purchase a firearm under Section 922(g)(1). Jackson opposed the motion, which is now fully briefed and ripe for review. See Record Documents 38, 39. For the reasons set forth below, the Rule 12(b)(6) Motion to Dismiss (Record Document 36) is **GRANTED**.

**BACKGROUND**

On or about December 6, 2024, Jackson attempted to purchase two firearms from Bass Pro in Bossier City, Louisiana. See Record Document 27 at 2. Bass Pro is a Federal Firearms Licensee. The National Instant Criminal Background Check System ("NICS") concluded that Jackson's prior state convictions in Louisiana precluded him from receiving the firearms. See id. Jackson has two previous felony convictions in the State of Louisiana, one for illegal use of a weapon and another for aggravated second degree battery. See id. He "served his sentences, completed supervision, and has remained conviction-free for over a decade." Id. Jackson submits that his sentences were

1

completed in 2011 or 2012; therefore, he satisfied the ten-year cleansing period under La. R.S. 14:95.1(C) to possess firearms within the State of Louisiana at some point in March 2022. See id. He contends there is no valid restriction on his possession of a firearm. See id. Alternatively, Jackson argues that Section 922(g)(1) is unconstitutional as applied to him because it violates his Second Amendment rights. See id. at 2-3.

Jackson also contends that one of the firearms he attempted to purchase was an "intrastate firearm" because it was manufactured in Louisiana, transported to Bass Pro in Louisiana, and never crossed state lines. See id. at 3. He argues the United States does not have the authority or legal power to prohibit him from receiving an intrastate firearm as there was no interstate transaction and no substantial effect on interstate commerce. See id. Moreover, Jackson believes his son should be permitted to "gift" an intrastate firearm to him because the firearm would not be involved in a commercial sale, interstate transaction, or economic exchange. See id. at 3-4.

Jackson filed the instant action against the United States for declaratory and injunctive relief. See id. at 4. He requests the Court to declare Section 922(g)(1) unconstitutional as applied to him; declare that Louisiana law no longer prohibits him from possessing a firearm; declare that applying Section 922(g)(1) to an intrastate, non-commercially obtained firearm exceeds Congress's power under the Commerce Clause; and enter a permanent injunction prohibiting the United States from enforcing Section 922(g)(1) against him. See id. Jackson also seeks costs and attorneys' fees. See id.

The United States now moves for dismissal with prejudice pursuant to Rule 12(b)(6). See Record Document 36. The United States submits that Jackson is permanently prohibited from carrying a concealed firearm under Louisiana law, which is

2

a sufficient and historically constitutional restriction of his civil right that prohibits him from purchasing a firearm under Section 922(g)(1). See Record Document 36-1 at 20. Moreover, the restriction extends to an "intrastate firearm." Id. Accordingly, the United States maintains that the denial of Jackson's purchase request in December 2024 was proper and Jackson has failed to state a legally cognizable claim. Id.

## LAW AND ANALYSIS

### I.    Rule 12(b)(6) Standard.

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine whether a complaint is adequate under Rule 8(a)(2), courts now apply the "plausibility" standard established in Bell Atlantic Corp. v. Twombly, and its progeny. See 550 U.S. 544 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." See id. at 555–56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding on a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, 981 F.2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts

do not have to accept legal conclusions as fact.  See id.  Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive.  See id. at 678–79.  If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted.  See id.

**II.      18 U.S.C. § 922(g)(1).**

18 U.S.C. § 922(g)(1) applies to individuals "who ha[ve] been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.  18 U.S.C. § 921(a)(20) further defines the term "crime punishable by imprisonment for a term exceeding one year" as follows:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, ***unless*** such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

(emphasis added).  Thus, the restoration of civil rights does not occur if the above "unless" clause is triggered.   In Caron v. United States, 524 U.S. 308 (1998), the Supreme Court applied the "unless" clause and held that a conviction remains disqualifying under Section 922(g)(1) when state law retains any restriction on the individual's firearm rights even if other civil rights have been restored. The Fifth Circuit adopted a two-prong test to determine whether the "rights restoration" exemption applies:  (1) the individual's civil rights must have been "sufficiently restored" under Section 921(a)(20) by regaining the rights to vote, to hold public office, and to sit on a jury; and (2) the individual must not be "expressly deprived of the right to possess a firearm by some provision of the restoration

4

law or procedure of the state of the underlying conviction," which would trigger the "unless" clause. U.S. v. Sam, No. CR 6:15-00254, 2016 WL 1600229, at *2 (W.D. La. Mar. 23, 2016), report and recommendation adopted, No. CR 6:15-00254, 2016 WL 1573002 (W.D. La. Apr. 18, 2016) (citing U.S. v. Chenowith, 459 F.3d 635, 636 (5th Cir.2006); see also U.S. v. Thomas, 991 F.2d 206, 213 (5th Cir.1993); U.S. v. Dupaquier, 74 F.3d 615, 617 (5th Cir.1996).

As will be discussed *infra*, Louisiana law does not restore the rights of certain violent offenders to possess a concealed firearm. Thus, the "unless" clause under Section 921(a)(20) is triggered to prevent the full restoration of civil rights related to firearms for such offenders, which makes them unable to possess or purchase a firearm under Section § 922(g)(1). While the Louisiana restriction is limited to concealed possession and not unconcealed possession of firearms, the limited restriction nevertheless qualifies as a limitation to the full restoration of rights under the "unless" clause. Sam, 2016 WL 1600229 (an individual was prohibited from obtaining a concealed carry permit under La. R.S. § 40:1379.3, and the court found that such prohibition "is sufficient to trigger the federal ban contained in the 'possess' and 'transport' elements of the 'unless clause.'").

### III.    Louisiana Statutes.

Under Louisiana law, it is unlawful for a person who has been convicted of "a crime of violence as defined in R.S. 14:2(B) to possess a firearm or carry a concealed weapon." La. R.S. 14:95.1(A)(1).[1] The statute goes on to state that this prohibition no longer applies when ten years have passed since the completion of the sentence for such a conviction.

---

[1] A crime of violence as defined in La R.S. 14:2(B) includes aggravated second-degree battery and illegal use of weapon. See La. R.S. 14:2(B)(31) and (61).

5

<u>See</u> La. R.S. 14:95.1(C).   Notwithstanding, even after the ten year cleansing period, Louisiana law still places restrictions on violent offenders related to possession of a concealed firearm.[2]

La. R.S. § 14:95(A)(1)(a) prohibits "[t]he intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one's person."  Section 95(A)(1)(b) states that the aforementioned provision shall not apply to a person with a valid concealed handgun permit.  Additionally, Section 95(M) provides an exception to the prohibition set forth in Section 14:95(A)(1)(a) when certain conditions are met, including that "the person is not prohibited from possessing a firearm under R.S. 14:95.1, R.S. 40:1379.3(C)(5) through (17), 18 U.S.C. 922(g), or any other state or federal law."  La. R.S. 14:95(M).   The provisions of Section 1379.3(C)(5)–(17) contain Louisiana's requirements for obtaining a concealed carry permit.  Thus, La. R.S. § 14:95(M) requires that an individual be able to meet the requirements necessary for obtaining a concealed carry permit to carry a concealed firearm without a permit.  Under Section 1379.3, an individual is not eligible for a concealed carry permit if they have a conviction for a crime of violence, which includes aggravated second-degree battery and illegal use of a weapon, even if that conviction has been expunged.  <u>See</u> La. R.S. 40:1379(C)(6), (10).  Therefore, despite Louisiana's enactment of "permit-less carry" under Section 14:95(M), the eligibility requirements for permit-less carry mirror those for obtaining a permit.  Individuals prohibited from obtaining a permit remain prohibited from carrying a concealed firearm without a permit.

---

[2] The Louisiana Legislature revised and amended Louisiana's concealed carry laws in 2024.  For purposes of the instant Memorandum Ruling, the Court has applied the version of La R.S. 14:95(M) and La. R.S. 40:1379.3 in effect from July 4, 2024 to July 31, 2025.

**IV.    Analysis.**

    **A.    Restoration of Civil Rights.**

Based on the statutory scheme set forth above, the Court finds that Jackson's claim as to the restoration of his rights is based on a misunderstanding of Louisiana law as to violent felony offenders and the carrying of concealed firearms. Current Louisiana law permanently prohibits violent offenders such as Jackson from not only obtaining a concealed carry permit under Section 1379.3, but also from carrying a concealed firearm without a permit pursuant to Section 95(M). While it is undisputed that Jackson has satisfied the ten year cleansing period under La. R.S. 14:95.1(C), there is still a restriction under Louisiana law limiting Jackson's possession of a concealed firearm. This restriction is sufficient to trigger the "unless" clause of Section 921(a)(20) and Jackson's rights have not been fully restored to qualify him to purchase a firearm under Section 922(g)(1). Because there was no full restoration of civil rights, the denial of Jackson's purchase request on December 6, 2024 was valid and the United States's Rule 12(b)(6) Motion is **GRANTED** on this ground.

    **B.    Constitutionality of Section 922(g)(1) and Permanent Restriction on Concealed Carry.**

Jackson seeks a declaration that Section 922(g)(1) is unconstitutional as applied to him. He further submits that if Louisiana law restricts his right to carry a concealed firearm – and this Court has concluded that it does –, then such state statutory scheme is also unconstitutional under the Second Amendment.

In New York State Rifle & Pistol Association, Inc., the Supreme Court provided a two-step framework for Second Amendment constitutional challenges. See 597 U.S. 1, 24 (2022). First, "Bruen requires the Court to decide 'if the Second Amendment's plain

text covers' the conduct at issue." U.S. v. Wilson, No. 22-238, 2024 WL 4436637, at *4 (citing Bruen, 597 U.S. at 24). Second, "the burden [...] shifts to the government to demonstrate that regulating [applicant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.' " Id. (citing Bruen, 597 U.S. at 24). "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.' " U.S. v. Diaz, 116 F.4th 458, 467 (5 Cir. 2024) (citing Bruen, 597 U.S. at 30). To determine whether regulations are relevantly similar under the Second Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Bruen, 597 U.S. at 29.

The Fifth Circuit in Diaz made clear that the Second Amendment's plain text covers felons as among "the people" covered by the Second Amendment. See 116 F.4th at 466. Thus, the Court will proceed to the second step under Bruen. In analyzing the second prong, the Court first must determine whether there are historical analogues that "impose a comparable burden on the right of armed self-defense" during the timeframe of the Second Amendment's ratification. Bruen, 597 U.S. at 27. In upholding a Section 922(g)(1) conviction predicated on a felony theft conviction, the Diaz court relied on three categories of historical analogues:

> (i) historical laws that authorized capital punishment and estate forfeiture as consequences of felonies, (ii) two proposals from state constitutional conventions that excluded those deemed dangerous from the right to bear arms, and (iii) the colonial-era "going armed" laws first discussed in Rahimi that "prohibited going armed offensively and authorized forfeiture of weapons as punishment."

U.S. v. Ezell, 2024 WL 4729314, at *2 (W.D. La. Nov. 8, 2024) (citing Diaz, 116 F.4th at 467–68, 470) (discussing U.S. v. Rahimi, 602 U.S. 680 (2024)) (internal citations omitted). In all three categories discussed in Diaz, the consequences of committing certain crimes

encompassed forfeiture of the right to bear arms.  The historical analogues discussed above are rooted in the common purpose of disarming individuals viewed as violent or as a threat to public safety. These analogues represent the longstanding tradition of firearm regulation that allows the "Government to disarm individuals who present a credible threat to the physical safety of others." Rahimi, 602 U.S. at 700.

Under this framework, Jackson's argument that Section 922(g)(1) is unconstitutional as applied to him fails as a matter of law.  Here, both of Jackson's predicate felony convictions – one for illegal use of a weapon and another for aggravated second degree battery – establish the required nexus to violence and public safety.  At a minimum, Jackson's conviction for illegal use of a weapon places him squarely into the category of individuals who present a threat to public safety.  Like in Diaz, the enforcement of Section 922(g)(1) against Jackson is "relevantly similar to that of the [historical analogues]: to deter violence and lawlessness." 116 F.4th at 469.  Jackson's challenge to Section 922(g)(1), and likewise his challenge to Louisiana's statutory scheme, fails under the historical tradition test.  Thus, the United States's Rule 12(b)(6) Motion is **GRANTED** on this ground.

### C.      "Intrastate" Firearm.

Finally, Jackson alleges that one of the firearms he sought to purchase or receive as a gift/donation from his son was an "intrastate firearm."  Thus, he submits that the United States lacked the authority under the Commerce Clause to regulate such a transaction.  Jackson's arguments fails.

The Gun Control Act ("GCA") of 1968 and its amendments, as codified in 18 U.S.C. § 922, confers upon the federal government the authority to regulate firearm transactions.

The Fifth Circuit has consistently upheld the GCA as a valid exercise of Congress's commerce power. See U.S. v. Patino, No. 24-10080, 2025 WL 637429 (5th Cir. Feb. 27, 2025); U.S. v. Alcantar, 733 F.3d 143 (5th Cir. 2013); U.S. v. Wallace, 889 F.2d 580 (5th Cir. 1989) ("[T]he words 'affecting commerce' are jurisdictional words of art, typically signaling a congressional intent to exercise its Commerce Clause power broadly, perhaps as far as the Constitution permits."). Congress also has the power to "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." Hollis v. Lynch, 121 F. Supp.3d 617 (N.D. Tex 2015) (quoting Gonzales v. Raich, 545 U.S. 1, 17 (2005)).

Additionally, 18 U.S.C. § 922(g)(1) prohibits the possession of "any firearm" when such possession is "in or affecting commerce." There is nothing in the statues that limits its scope to firearms transported in interstate commerce. Within the Fifth Circuit, "the acquisition of firearms by convicted felons and persons under indictment for felonies, although arguably intrastate activity, imposes a sufficient burden upon interstate commerce to be a proper subject for federal regulation" because "[i]f Congress is to effectively prevent the interstate use of guns for illegal purposes it must control their sources: manufacturers, dealers, and importers," which is "what it sought to do in § 922." U.S. v. Nelson, 458 F.2d 556, 559 (5th Cir. 1972).

As indicated above, prohibited possession under Section 922(g)91) extends to "any firearm." Jackson's allegations regarding the "intrastate firearm" lack merit and fail to state a claim upon which relief may be granted and the United States's Rule 12(b)(6) Motion is **GRANTED** on this ground.

## CONCLUSION

Based on the foregoing, the denial of Jackson's purchase request in December 2024 was proper.  He has failed to state a legally cognizable claim and the United States's Rule 12(b)(6) Motion to Dismiss (Record Document 36) is **GRANTED**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 31st day of March, 2026.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT